People v Morgan (2024 NY Slip Op 50771(U))

[*1]

People v Morgan

2024 NY Slip Op 50771(U)

Decided on June 25, 2024

Criminal Court Of The City Of New York, Queens County

Licitra, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 25, 2024
Criminal Court of the City of New York, Queens County

The People of the State of New York

against
Morgan, Defendant.

Docket No. CR-027394-22QN

For the People: Melinda Katz, District Attorney of Queens County (by Siranoush Nalbandian)
For Mr. Morgan: The Legal Aid Society (by Susan Crile)

Wanda L. Licitra, J.[FN1]

Pending before the court is a C.P.L. § 30.30 motion to dismiss.
Under C.P.L. § 30.30[1][b], the prosecution had ninety days of trial readiness. "Whether the People have satisfied this obligation is generally determined by computing the time elapsed between the filing of the first accusatory instrument and the People's declaration of readiness, subtracting any periods of delay that are excludable under the terms of the statute and then adding to the result any postreadiness periods of delay that are actually attributable to the People and are ineligible for an exclusion." (People v. Cortes, 80 NY2d 201, 208 [1992]).
As a predicate matter, the motion is timely. A C.P.L. § 30.30 motion to dismiss is not subject to the forty-five-day requirements of C.P.L. § 255.20[1]. (C.P.L. § 170.30[2] ["A motion pursuant to this section, except a motion pursuant to paragraph (e) of subdivision one [which includes C.P.L. § 30.30 motions], should be made within the period provided by section 255.20."]). Even if it were, a court has discretion under that subsection, "upon application of the defendant," to "fix" motion schedules outside of the forty-five-day default schedule. (C.P.L. § 255.20[1]). Here, a prior court granted the defense a motion schedule to file this motion.
Criminal Procedure Law § 245.50[4] does not require the court to preclude this motion. (See generally People v. Wiaffe, 80 Misc 3d 1202[A] [Crim. Ct., Queens County 2023]). While that section asks that parties make challenges to certificates of compliance "as soon as practicable," (C.P.L § 245.50[4][c]), nowhere does it state that failure to do so retroactively waives a proper certificate as a prerequisite of the prosecution's readiness. To the contrary, the rest of the "as soon as practicable" sentence says that "nothing in this section shall be construed to waive a party's right to make further challenges, including but not limited to a motion pursuant to C.P.L. section 30.30." (Id.). Indeed, the only statutory mechanism for the defense to waive the prosecution's duty to file a proper certificate before stating ready is C.P.L. § 245.75. That section is entitled "Waiver of discovery by defendant." (C.P.L. § 245.75). There, the Legislature required that any such waiver "be in writing, signed for the individual case by the [*2]counsel for the defendant and filed with the court." (Id.). Then, the court must "inquire of the defendant on the record to ensure that the defendant understands his or her right to discovery and right to waive discovery." (Id.). A court may not supplant these reticulated statutory requirements with its own rule that a defense attorney's silence, on its own, waives automatic discovery.
This structure is consistent with longstanding views of C.P.L. § 30.30 as a statute solely concerning the prosecution's obligation to be ready for trial. (See, e.g., People v. N.S., 58 Misc 3d 613, 616 [Crim. Ct., Queens County 2018], aff'd 71 Misc 3d 140[A] [App. Term, 2d Dep't 2021] ["The People's obligation—that they alone possess—[is] to be ready for trial before the expiration of their '30.30 clock.'"]). The statute requires that "the People" validly state ready for trial within the prescribed time periods. (C.P.L. § 30.30[1] [emphasis added]). It was "specifically intended to address delays occasioned by prosecutorial inaction." (People v. Clarke, 28 NY3d 48, 52 [2016] [internal quotation marks omitted] [emphasis added]). "Indeed, that guiding principle is precisely why the People are charged with any delay pre-readiness, subject to C.P.L. § 30.30[4] exclusions, but only with delay 'solely attributable to them' post-readiness." (People v. Spaulding, 75 Misc 3d 1219[A], at *5 [Crim. Ct., Bronx County 2022] [quoting People v. Jackson, 267 AD2d 183, 184 [1st Dep't 1999]). Thus, like any other legal requirement that the prosecution faces before stating ready for the first time, the burden of fulfilling the prosecution's initial automatic discovery obligation lies "squarely upon the shoulders of the District Attorney." (See N.S., 58 Misc 3d at 616, aff'd 71 Misc 3d 140[A]). It would overturn the adversarial nature of criminal court to expect a defense attorney to shoulder the prosecutor's burden and act like their supervisor. Before stating ready, "the prosecution" is expected to properly certify that they exercised reasonable diligence to ascertain the existence of their discovery and then disclosed all their known material. (C.P.L. § 245.50[3] [emphasis added]). They are not expected to deliver a puzzle that requires everyone else to piece together what the prosecution already knows they did.
In any event, even assuming that the prosecution's initial statement of readiness was valid, they nonetheless exhausted their readiness time here. The prosecution commenced the case on November 4, 2022, and they claimed to be ready for the first time eighty-two days afterwards. On February 15, 2024, during litigation over this motion, the defense submitted a supplemental memorandum of law. The court, in its discretion, accepted the filing. Upon reviewing the memorandum, the court ordered the prosecution to respond, and granted their request to do so by April 15, 2024. The prosecution did not meet this deadline, nor did they request any extension. Only upon follow-up from the court on April 29, 2024, the prosecution filed their response on April 30, 2024.
As noted earlier, the court must "add[] . . . any postreadiness periods of delay that are actually attributable to the People and are ineligible for an exclusion." (Cortes, 80 NY2d at 208). Under C.P.L. § 30.30[4][a], a "reasonable period of delay resulting from . . . pre-trial motions" must be excluded from any C.P.L. § 30.30 calculation. As that rule implies, however, if the prosecution unreasonably delays proceedings on a pretrial motion, then that delay is attributable to them. "Thus, the People are chargeable with the time between [a] court-imposed deadline to respond . . . and the date on which the People actually filed a response." (People ex rel. Ferro v. Brann, 197 AD3d 787, 788 [2d Dep't 2021]; see also People v. Delosanto, 307 AD2d 298, 299 [2d Dep't 2003] ["[T]he Supreme Court should have charged the People with a 13-day period [between] a court imposed deadline to respond to one of the defendant's pretrial motions [to] the [*3]date that the People actually filed a response."]; People v. Gonzalez, 266 AD2d 562, 563 [2d Dep't 1999] [holding that a period between which "the People were originally scheduled to respond" and "the date upon which they actually did respond" should be "charged to the People" because "it constitutes a period of unreasonably delay"]; People v. Commack, 194 AD2d 619, 620 [2d Dep't 1993] ["[T]he last 10 days . . . should be charged to the People because the People did not respond to the motion until 10 days after the court-ordered deadline."]). Here, the court must, at least, add the fourteen-day delay during which the prosecution was radio silent to the eighty-two days that it waited to state ready for trial at the outset. That equates to ninety-six days of delay, exceeding the ninety that the prosecution is allowed. (C.P.L. § 30.30[1][b]). On that basis alone, the court must dismiss this case.
Still, the court notes that it would have found the prosecution's statement of readiness illusory, as well. Before validly stating ready for trial, the prosecution must certify they have exercised "due diligence" and made "reasonable inquiries" to ascertain the existence of discoverable material. (C.P.L. § 245.50[1]). Where, as here, a C.P.L. § 30.30 motion calls that certificate into question, the prosecution "bear[s] the burden of establishing that they did, in fact, exercise due diligence and made reasonable inquiries prior to filing." (People v. Bay, 41 NY3d 200, 213 [2023]). To meet that burden, the prosecution must provide the "necessary factual basis" on which a court could find "due diligence." (People v. McKinney, 71 Misc 3d 1221[A], at *7 [Crim. Ct., Kings County 2021]; see also People v. Critten, 77 Misc 3d 1219[A], at *3 [Crim. Ct., NY County 2022] [assessing "due diligence requires the People to show how due diligence was exercised"]). "If the prosecution fails to make such a showing, the [certificate] should be deemed improper, the readiness statement stricken as illusory, and—so long as the time chargeable to the People exceeds the applicable CPL 30.30 period—the case dismissed." (Bay, 41 NY3d at 213).
The prosecution here fails to create a record that could substantiate reasonably diligent efforts to ascertain the existence of discoverable information. They admit they certified compliance without disclosing body-worn camera video from two police officers—including the arresting officer. They admit they certified compliance without ascertaining or reviewing any DD5s from "companion cases." And they admit they certified compliance without disclosing body-worn camera audit logs, which they unilaterally deemed to be not discoverable.
These circumstances do not illustrate a reasonably diligent effort to ascertain the existence of discoverable information. The prosecution states that they did not disclose one officer's body-worn camera video because it was "rejected because of file size." Even though it was "rejected"—presumably, a fact that the person sending the file would know, and that the intended recipient would not know—the prosecution did nothing to rectify this error until informed by the defense attorney, who caught it through inference. Regarding the other body-worn camera video, the prosecution simply states that "the video had not been shared with QDA at the time of filing the People's Certificate of Compliance" and that the prosecutor "had not realized the officers [sic] body worn camera was not in our actual possession at the time." Again, the prosecution did nothing to rectify this error until they were informed by the defense attorney, who again caught it by inference. The prosecution provides no explanation as to why they did not, as a regular part of their diligent review, "check the items sent to them" by the police against the list of what was expected from the officers—something the defense attorney apparently did. (See People v. Guzman, 75 Misc 3d 132[A], at *1 [App. Term, 2d Dep't 2022] [involving a similar lack of reasonable diligence]). This is a simple misdemeanor prosecution, and body-worn [*4]camera footage is a basic part of any case. A reasonable prosecutor must ensure that they have ascertained the existence of body-worn camera video. Indeed, the police and the prosecutor's office even share a "District Attorney Body-Worn Camera Checklist" that should make this basic task straightforward to discharge. (See People v. Serafino, 82 Misc 3d 1221[A], at *1 [Crim. Ct., Queens County 2024] [noting that body-worn camera footage is a "basic, routine, and critical piece of evidence" and that whether an officer is involved and had their camera "activated" is noted in the "District Attorney Body-Worn Camera Checklist"]). Similarly, the prosecution offers no reasonable explanation for why they never ascertained and reviewed the DD5s for the "companion cases." Simply "reach[ing] out to the [police] several times" does not suffice. (Indeed, the prosecution's record is not even clear as to whether any of these times were before filing their certificate.)
Finally, the prosecution cannot reasonably refuse to review and disclose body-worn camera audit logs. (E.g., People v. Shar, 82 Misc 3d 1251[A] [Crim. Ct., Richmond County 2024] [Rajeswari, J.]; People v. James, 82 Misc 3d 1248[A] [Crim. Ct., Kings County 2024] [Robinson, J.]; People v. Lyte, 83 Misc 3d 1204[A] [Crim. Ct., NY County 2024] [Lewis, J.]; People v. Cumbe, 82 Misc 3d 1242[A] [Crim. Ct., Kings County 2024] [Mimes, J.]; People v. Champion, 81 Misc 3d 292 [Crim. Ct., NY County 2023] [Rosenthal, J.]; People v. Ballard, 82 Misc 3d 403 [Crim. Ct., Queens County 2023] [Gershuny, J.]; People v. Torres, 79 Misc 3d 1204[A] [Crim. Ct., Queens County 2023] [Licitra, J.]). Police officers are required by the NYPD Patrol Guide to annotate body-worn camera footage in the audit logs. (Ballard, 82 Misc 3d at 407-08). And then, "assuming mandatory procedures are followed," the police share those documents with the prosecutors. (Champion, 81 Misc 3d 297-98). The prosecution, at least, has a login to Evidence.com to access these documents on a cloud-based storage system. (See Torres, 79 Misc 3d 1204[A], at *1). "Essentially, audit trails appear to be available to the People at the push of a button." (People v. Gregory Bernard, CR-033924-23NY [Crim. Ct., NY County June 17, 2024] [Morales, J.]). Under these circumstances, the prosecution's choice to ignore or withhold this material cannot be called reasonable or diligent.
The prosecution has exhausted their readiness time. The motion to dismiss is granted.
Any remaining issues are moot.
The foregoing constitutes the order and decision of the court.
Dated: June 25, 2024
Queens, NY
Wanda L. Licitra, J.C.C.

Footnotes

Footnote 1: This decision is truncated for publication.